**2026 Tex. Bus. 50**



**The Business Court of Texas,
First Division**

| | | |
|---|---|---|
| FIBERWAVE, INC., f/k/a | § | |
| SPEARHEAD CONSULTING, INC., | § | |
|    *Plaintiff*, | § | |
| v. | § | Cause No. 25-BC01A-0013 |
| AT&T ENTERPRISES, LLC, f/k/a | § | |
| AT&T CORP., | § | |
|    *Defendant/Counter-Plaintiff*, | § | |
| v. | § | |
| FIBERWAVE, INC., f/k/a | § | |
| SPEARHEAD CONSULTING, INC., | § | |
| SPEARHEAD NETWORKS TECH, | § | |
| INC., FAISAL CHAUDHRY, and | § | |
| CHRIS PERCY, | § | |
|    *Counter-Defendants*. | § | |
| | § | |

═══════════════════════════════════════

**Memorandum Opinion Supporting
Omnibus Order on Motions for Summary Judgment and
Order on Cross-Motions Under TRCP 166(g)**

═══════════════════════════════════════

¶1    By its July 7, 2026 *Omnibus Order on Motions for Summary Judgment*, the Court granted certain dispositive relief sought by movants in various motions as follows:

- *AT&T's Combined Motion for Traditional and No-Evidence Summary Judgment on Plaintiff's Fraudulent Inducement Claim* ("Motion I") filed on March 11, 2026, was GRANTED on both traditional and no-evidence grounds.

- *Fiberwave, Inc. f/k/a Spearhead Consulting, Inc.'s and Chris Percy's No-Evidence Motion for Summary Judgment Against AT&T Enterprises, LLC f/k/a AT&T Corporation* ("Motion II") filed March 20, 2026, was GRANTED IN PART on no-evidence grounds as to AT&T's fraud claims against Fiberwave and Percy on all challenged elements.

- *Fiberwave, Inc. f/k/a Spearhead Consulting, Inc.'s and Chris Percy's Traditional Motion for Summary Judgment Against AT&T Enterprises, LLC f/k/a AT&T Corporation and Request for Oral Hearing* ("Motion III") filed March 23, 2026, was GRANTED IN PART on traditional grounds as to AT&T's fraud claims against Fiberwave and Percy with respect to the economic loss doctrine as an affirmative defense.

- *Counter-Defendants Spearhead Networks Tech, Inc. and Faisal Chaudhry's Combined Traditional and No-Evidence Motion for Summary Judgment and Request for Oral Hearing* ("Motion IV") filed March 24, 2026, was GRANTED IN PART on traditional grounds as to AT&T's fraud claim against Chaudhry regarding justifiable reliance, proximate causation, and the economic loss rule and on no-evidence grounds on all challenged elements.

- *Fiberwave, Inc. f/k/a Spearhead Consulting, Inc.'s and Chris Percy's Motion to Adopt and Join Counter-Defendants Spearhead Networks Tech, Inc. and Faisal Chaudhry's Combined Traditional and No-Evidence Motion for Summary Judgment and Request for Oral Hearing,* filed March 25, 2026, joining in Spearhead Networks' and Chaudhry's hybrid motion for summary judgment, was GRANTED IN PART on traditional grounds as to the fraud claims against Fiberwave and Percy regarding the elements of justifiable reliance and proximate causation.

¶2    With the parties having requested an opinion on these dispositive rulings, the Court issues this Memorandum Opinion in support thereof. *See* TEX. R. CIV. P. 360(a)(1). The Court issues no opinion on its non-dispositive rulings, including the denial (in whole or in part) of additional dispositive motions presented by the parties, omitted from the above list.

¶3    First, however, the Court addresses later-heard motions and arguments concerning construction of the 2022 Alliance Program Agreement ("the Alliance Agreement") and Appendix 1—the Solution Providers Guidebook—which were the subject of pending cross-motions under Texas Rule of Civil Procedure 166(g), ruled on herein.

**PART ONE: Ambiguity in the 2022 Alliance Agreement and Guidebook**

¶4    The parties' contract interpretation disputes are governed by Texas law. Proper construction of the 2022 Alliance Agreement and its incorporated Guidebook means "giving the language its plain, ordinary, generally accepted meaning, considering the context in which words are used, avoiding constructions that render provisions meaningless, and construing contract provisions together so as to give effect to the whole." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022) (internal citations

omitted). The Court must "also avoid constructions of contract language that would lead to absurd results." *Id.*

¶5 By cross-motions, the parties dispute the start date for calculating the making of vested Residual Compensation payments pursuant to Guidebook Section VI.B.4. following a Termination of the Alliance Agreement for "cause." Notably, "cause" is not defined in either the Alliance Agreement or the Guidebook. The Court does not decide whether a Termination for "cause" has occurred.

¶6 Upon a termination for cause, the Guidebook states that a Solution Provider retains a "vested interest in earned Residual Compensation for Orders or Renewals earning Residual Compensation for no more than 36 monthly payments remaining on an Order" with further limiting language in certain circumstances. AT&T contends that the 36 monthly payments should be counted from the start date of the Order. Fiberwave contends that the 36 monthly payments should be counted from the date of the termination.

¶7 Notably, paragraphs 3 and 5 of the Guidebook's same subsection expressly provide for a vested interest to be retained in certain Compensation in varying circumstances "for no more than [a number of] months from the date of Termination," either for cause or otherwise. Where the parties

intended a time period to run from Termination, they expressly stated as much. Taking the difference in plain language at face value disfavors Fiberwave's interpretation.

¶8    But AT&T's reading does not fully fit the text, either. The use of "no more than" and "remaining" implies a calculation of what is left or as-yet unpaid. Removing the concept of Termination, the number of "remaining" monthly payments on any given Order—from the time an Order is entered into AT&T's ordering system and/or the time Compensation is triggered—is unknowable. An Order does not have an inherent or discernable end date and cannot have "remaining" monthly payments until some other event occurs. If the meaning was as AT&T suggests, the parties could have provided for the vesting of the first 36 monthly payments of an Order's lifespan, with no need for "remaining." Such a reading might be logical if the monthly payments on the Order originated within 36 months before Termination. But where an Order has already generated more than 36 monthly payments, a Solution Provider could (theoretically) be on the hook for Chargebacks or Offset for monthly payments disbursed to the Solution Provider—perhaps for many years—*before* a Termination for cause, with such payments having lost their vested status upon the occurrence of the later cause. And even if that were not

the case, the Guidebook, taken as a whole, does not support a reading where a Solution Provider would be entitled to Residual Compensation for an Order that has generated fewer than 36 monthly payments, but not for an Order that has generated more than 36 monthly payments. These factors support Fiberwave's contrary interpretation.

¶9    If Section VI.B.4. of the Guidebook meant "no more than 36 monthly payments remaining on an Order from the date of Termination," it could have said so; it did not. However, if the Guidebook meant "no more than 36 monthly payments remaining on an Order from the date an Order was entered into AT&T's ordering system or the date compensation for an Order was triggered," it could have said that, as well; it did not. Either interpretation could have been clearly articulated. The language actually chosen ("no more than 36 monthly payments remaining on an Order") regrettably was not clear, particularly when viewed in context with neighboring provisions.

¶10    Because the parties' opposing interpretations each have support in the wording and context of the Guidebook and because each is arguably reasonable for different reasons, the Court concludes the Guidebook is ambiguous. Its meaning thus presents "a fact issue for the jury and extraneous evidence may be admitted to help determine the language's meaning."

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 480 (Tex. 2019).

**PART TWO: Memorandum Opinion in Support of Dispositive Rulings**

**I.     Fiberwave failed to establish a genuine issue of material fact to preclude summary judgment on its fraudulent inducement claim.**

¶11     In Motion I, AT&T argued, inter alia, that Plaintiff proffered no evidence that AT&T intended not to perform when it entered into the 2022 Alliance Program Agreement ("the Agreement") or that Plaintiff's purported reliance was justified. The Court agreed.

**A.     Plaintiff's evidence of AT&T's intent not to perform at the time it entered into the Agreement did not rise above mere surmise or suspicion.**

¶12     An actionable misrepresentation occurs when a party promises to perform a future act with no present intent to perform it. *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). "Because intent to deceive or defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence." *IKON Off. Sols., Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). To constitute intent to defraud (i.e. intent not to perform), the circumstantial evidence proffered "must transcend mere suspicion." *Id.* (quoting *Lozano v.*

*Lozano*, 52 S.W.3d 141, 149 (Tex. 2001)). Evidence that does no "more than create a mere surmise or suspicion of its existence" does not "rise above a scintilla." *Lozano*, 52 S.W.3d at 145 (Phillips, C.J., concurring in part); *see King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (stating that when "the evidence offered to prove a vital fact is no more than a mere scintilla," no-evidence motion will be granted (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997))).

¶13    Here, Fiberwave claimed AT&T promised to pay Fiberwave post-termination vested Residual Compensation ("RC") even if AT&T terminated the Agreement for cause, based on payments characterized by AT&T as "kickbacks" purportedly prohibited by the Agreement and the incorporated Guidebook.[1] In support, Fiberwave proffered the following evidence: AT&T's withholding of *all* post-termination Residual Compensation and AT&T's

---

[1] Fiberwave characterizes its allegation of misrepresentation by AT&T as follows: "AT&T's breach by wrongfully withholding Fiberwave's post-termination vested Residual Compensation due to Fiberwave's alleged participation in the 'kickback' scheme, coupled with actual knowledge of those alleged 'kickbacks' in 2016-2018 constitutes a misrepresentation." Pl.'s Resp. to Mtn. I at ¶ 50 (footnote omitted).

knowledge of allegations of kickbacks in 2016 and 2018.[2] The Court found that this evidence was insufficient to raise a genuine issue of material fact concerning AT&T's alleged intent not to perform, defeating Fiberwave's fraudulent inducement claim as a matter of law.

¶14   To prove AT&T's knowledge of allegations of kickbacks in 2016 and 2018, Fiberwave pointed to evidence that AT&T received reports of a kickback scheme in 2016 and 2018, that AT&T internally investigated those reports, and that AT&T determined the reports were unsubstantiated. On such a record, Fiberwave argued that AT&T chose to keep its head in the sand in order to reap the benefits of Fiberwave's efforts under the Agreement but simultaneously intended not to fulfill its obligations when it terminated the Agreement—by relying on such conduct despite prior knowledge of it.

¶15   Circumstantial evidence that AT&T could have known or might have known of conduct that would support its later denial of post-termination Residual Compensation to Fiberwave does not constitute more than a scintilla

---

[2] Fiberwave disputed whether AT&T could reduce Fiberwave's post-termination Residual Compensation under Section 6.3 of the Agreement (*see* Pl.'s Resp. to Mtn. I Appx. at pp. 260-61) and Section VI(B)(4) of the Solution Providers Guidebook (*see id.* at p. 338). Pl.'s Resp. to Mtn. I at ¶ 53. But if AT&T could, Fiberwave argued, this only created "a fact question as to the *amount* of Fiberwave's damages, not the *existence* of Fiberwave's damages because those provisions only allowed for 'offsets,' 'deductions,' and/or 'limitations.'" *Id.*

of proof that AT&T intended not to perform its post-termination obligations at the time it entered into the Agreement. Fiberwave's conclusion from the facts presented is purely speculative, as the evidence proffered does not "transcend mere suspicion." *IKON*, 125 S.W.3d at 124 (quoting *Lozano*, 52 S.W.3d at 149). Having failed to adduce sufficient evidence of intent not to perform, Fiberwave failed to raise a genuine issue of material fact as to a false representation.

**B.** **The waiver and merger provisions in the Agreement rendered Fiberwave's purported reliance on the alleged misrepresentation unjustified and Fiberwave presented no evidence that fell outside the scope of those provisions.**

¶16    Even if there was evidence of an actionable misrepresentation, the Court found that any reliance on such misrepresentation was unjustified as a matter of law. A party's reliance on a misrepresentation "may be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 558 (Tex. 2019). One such circumstance—raised generally by AT&T's briefing— is when the alleged misrepresentation is contradicted by express terms in the agreement. *Id.* (citing *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d

419, 424 (Tex. 2015) ("[A] party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms.")).

¶17    In this case, the Agreement contains a waiver provision in Section 20.8 and a merger clause in Section 20.9, both negating any justifiable reliance by Fiberwave on any alleged promise by AT&T to pay post-termination Residual Compensation despite alleged knowledge by AT&T of past conduct that would permit deductions, offsets, or limitations of the same. In pertinent part, the waiver provision reads: "No course of dealing or failure of either Party to strictly enforce any term, right or condition of this Agreement will be construed as a general waiver or relinquishment of such term, right or condition." Pl.'s Resp. to Mtn. I Appx. at p. 274. The merger clause reads:

> All prior written and oral negotiations and agreements, and all contemporaneous oral negotiations and agreements, between the Parties on the matters contained in this Agreement are expressly merged into and superseded by this Agreement (including, without limitation, any prior agreement related to the marketing and support of any of the Services) and must not be contradicted, explained or supplemented by any course of dealing between AT&T or any of its Affiliates and SP or any of its Affiliates. There are no understandings or representations, express or implied, not expressly set forth in this Agreement.

*Id.* The Agreement includes all addenda and appendices, such as the Guidebook.

¶18    Having contractually disclaimed reliance on any past conduct between the parties and on any failure by AT&T to strictly enforce terms of the parties' Agreement, Fiberwave could not now claim to have justifiably relied on any alleged promise by AT&T to pay post-termination Residual Compensation despite a previous course of dealing that would justify non-payment. For this additional reason, Fiberwave's fraudulent inducement claim failed.

## II.    As a matter of law, AT&T cannot prevail on its fraud claim against Chaudhry.

¶19    In Motion IV, Chaudhry moved for summary judgment on AT&T's fraud claim against him on both traditional and no-evidence grounds.[3] The Court granted the same relief.

### A.    Chaudhry's Summary Judgment Grounds

¶20    The traditional motion urged judgment based on evidence offered to negate the elements of justifiable reliance and proximate causation.

---

[3] Spearhead Networks Tech, Inc. moved for the same relief, but AT&T's fraud claim against Spearhead Networks was voluntarily dismissed in AT&T's April 3, 2026 Notices of Partial Nonsuits, making the motion moot as to that claim.

Chaudhry pointed to evidence of a lack of reasonable diligence on the part of AT&T and argued that AT&T should be charged with knowledge of facts (specifically, the payment of kickbacks investigated by AT&T as early as November 2016) that AT&T could have known, through reasonable due diligence, before executing the relevant Alliance Agreement. *See Barrow-Shaver Res.*, 590 S.W.3d at 497 (discussing duty of party claiming fraud to use reasonable diligence in arm's-length transactions to protect his own interests). As to causation, Chaudhry argued that AT&T could not identify any unearned commission payments or attribute any of its losses to the conduct of Spearhead Networks, specifically, as opposed to similar conduct by other Solution Providers. Chaudhry contended that AT&T's failure to articulate damages caused by kickbacks involving Spearhead Networks and/or Chaudhry, as opposed to other Solution Providers legally foreclosed any showing that the acts of Chaudhry or Spearhead Networks were a substantial factor in AT&T's injuries, without which the injuries would not have been suffered. *See Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017) (describing cause-in-fact and foreseeability components of proximate cause).

¶21   The traditional motion further raised the defense of the economic loss rule as a bar to the relief sought by AT&T. Chaudhry argued that the

allegedly fraudulent conduct and the related damages theories "are subsumed" by obligations in the contract and damages therefrom. *See*, *e.g.*, Mtn. IV at ¶¶ 72, 76-77. Consequently, AT&T did not advance damages not barred by the economic loss rule.

¶22 The no-evidence motion challenged four elements of AT&T's fraud claim, specifically: (1) a false, material representation by the defendant; (2) which the defendant knew was false or made recklessly without knowledge of its truth or falsity; (3) with intent to induce the plaintiff to act upon it; and (4) the plaintiff did actually and justifiably relied upon it and thereby suffer injury. *See JP Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018).

### B.    AT&T's Response

¶23 In response to the traditional grounds, AT&T refuted Chaudhry's claim that the actions of which it complained could have been discovered through due diligence. AT&T referred to evidence that further investigation would not have been reasonable or even possible due to its lack of subpoena power; according to AT&T, further efforts were not anticipated to be fruitful and it was reasonable to conclude its inquiries based on the information known at the time. AT&T also argued that proximate cause was established by the

link between the complained-of actions of Chaudhry and its payment of commissions it would not otherwise have paid. Yet, in doing so, AT&T did not specify any such particular commissions. Finally, in response to Chaudhry's assertion of the economic loss rule, AT&T hinged its claim on the possibility of obtaining extra-contractual relief in one of two forms: disgorgement or rescission.

¶24 In response to the no-evidence motion, AT&T contended that Chaudhry's execution of the Alliance Agreements on behalf of Fiberwave, formerly known as Spearhead Consulting, constituted a misrepresentation where the Agreements represented compliance with "all applicable anticorruption laws (including commercial bribery laws)" and non-involvement in "fraudulent practices." AT&T further argued that Chaudhry fraudulently withheld information about the payment of alleged kickbacks to AT&T employees, for the purpose of ensuring continued business with AT&T. AT&T again urged its justifiable reliance on such alleged misrepresentations and argued for disgorgement of commissions it would not otherwise have paid, which AT&T contended were proximately caused by the alleged fraudulent representations and omissions.

## C.     Conclusions

¶25   The Court first addresses the no-evidence grounds raised by Chaudhry. As to the first element, AT&T has yet to identify any particular law, state or federal, that was violated by the alleged conduct of Chaudhry. [4] Accordingly, the Court cannot conclude that AT&T has raised a fact issue as to whether Chaudhry's alleged representation of compliance with the same was false in the first instance. Moreover, AT&T did not make a single reference to any exhibit or testimony in its argument concerning Chaudhry's alleged intent to induce reliance by AT&T. On either element, Chaudhry's motion merited granting. AT&T's response as to justifiable reliance and injury was similarly thin and failed to raise a fact issue that would save its fraud claim from summary judgment.

¶26   Those same issues were also presented for traditional summary judgment. While the traditional grounds need not be reached due to the claim failing on no-evidence grounds, the Court nevertheless determined that

---

[4] The Court notes that, in some instances, "kickbacks" are wholly barred (such as where public funds are involved), *see* 42 U.S.C. § 1320a-7b (prohibiting acceptance of remuneration for facilitating payments under a "Federal health care program"), while in other instances, "kickbacks" are merely regulated, *see* TEX. R. PROF. COND. Rule 1.04 (setting conditions for fee sharing between attorneys from different firms, while silent on fee sharing between attorneys from the same firm).

Chaudhry has established his right to traditional summary judgment on the basis of his affirmative defense of the economic loss rule.

¶27   Even accepting as true that Chaudhry owed the duty allegedly breached—"the duty to refrain from misrepresentations and omissions of material information" (*see* Resp. to Mtn. IV at p. 12; *see also Formosa Plastics Corp. USA v. Presidio Eng'rs. & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998))—and viewing the same as being "independent of the contractual undertaking" (*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *see also Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011)), the question of independent injury remained. *See Chapman Custom Homes*, 445 S.W.3d at 718 (stating that "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking *and the harm suffered is not merely the economic loss of a contractual benefit*" (emphasis supplied)).

¶28   To the extent AT&T sought disgorgement of commissions it allegedly would not otherwise have paid, such relief is not an available remedy for fraud. *See McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 905 (Tex. App.—Dallas 2014, pet. denied) (distinguishing disgorgement as an equitable remedy from actual damage awards and explaining its purpose

of protecting fiduciary relationships). Moreover, AT&T has not pleaded for disgorgement, but solely for recovery of monetary damages. *Cf. Med. RX Servs. LLC v. Georgekutty*, No. 02-21-00017, 2021 WL 6069102, at *4–6 (Tex. App.—Fort Worth Dec. 23, 2021, no pet.) (affirming summary judgment where non-movants specifically pleaded actual and exemplary damages but "did not fairly raise [disgorgement] in their pleadings"). In this case, an arm's-length transaction between sophisticated parties with no fiduciary entanglements or other relationship of trust or confidence, the Court found disgorgement was not an available remedy for AT&T's fraud claim.

¶29  To the extent AT&T sought rescission, AT&T's arguments again fell short. Rescission, like disgorgement, is an equitable remedy—one that is available only when money damages are not adequate. *Hrdy v. Second St. Props. LLC*, 649 S.W.3d 522, 553 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). Here, AT&T pleaded specifically for recovery of money damages, not for rescission. And in its summary judgment response, AT&T offered no argument or evidence that money damages would be in any way inadequate. Accordingly, there was no evidence and no record supporting the recovery of equitable relief by AT&T in this case.

¶30 For all of these reasons, and as further supported by movants' arguments and the record before the Court, the Court granted summary judgment in favor of Chaudhry on both traditional and no-evidence grounds with respect to AT&T's fraud claim against him.

## III. As a matter of law, AT&T cannot prevail on its fraud claims against Fiberwave and Percy.

¶31 AT&T's April 3, 2026 Notices of Partial Nonsuits did not expressly nonsuit a fraud claim against Fiberwave, nor did they list a fraud claim against Fiberwave as a remaining claim. Fiberwave and Percy both moved for no-evidence and traditional summary judgment, via separate motions, on AT&T's fraud claims against both of them, and AT&T's responses (filed after its nonsuits) sought to establish genuine issues of material fact as to fraud by Fiberwave and Percy. The Court therefore proceeded on the same understanding as that reflected in the parties' submissions: that the fraud claim against Fiberwave was still pending.

### A. Fiberwave and Percy's Summary Judgment Grounds

¶32 In their earlier-filed motion (Motion II), Fiberwave and Percy challenged AT&T's fraud claims on no-evidence grounds. Days later, they moved for summary judgment on traditional grounds, which the Court granted

with respect to the assertion of the economic loss rule as an affirmative defense. Fiberwave and Percy later incorporated Spearhead Networks' and Chaudhry's traditional summary judgment arguments as to justifiable reliance and causation via joinder.

### B. AT&T's Responses

¶33 In response to Fiberwave and Percy's no-evidence motion, AT&T sought to establish the elements of fraud by relying on representations in the Alliance Agreement and incorporated Guidebook signed on behalf of Fiberwave (under its previous name, Spearhead Consulting) via its agent—at the time, Chaudhry. No mention was made of any representation by Percy, nor did AT&T make any effort to attribute any misrepresentation to Percy. Instead, AT&T argued that Percy's fraud occurred via omission by failing to disclose payments he was receiving from a Solution Provider, at a time when Percy was still an employee of AT&T. According to AT&T, Percy accepted kickbacks from Fiberwave and then created documentation to make the kickback appear to be a loan; Percy refutes such allegations. Relying on its allegations of these representations and omissions, AT&T contended it entered into the Alliance Agreement and thereby was injured in the form of unspecified commissions paid to Fiberwave that would otherwise have been withheld.

¶34 As to the traditional motion, AT&T advanced essentially the same arguments with respect to justifiable reliance, proximate cause, and—of the greatest relevance—the economic loss rule that it presented in response to the motion of Spearhead Networks and Chaudhry.

**C. Conclusions**

¶35 Addressing the no-evidence grounds first, the Court found that judgment was warranted on all of the challenged elements, specifically: (1) a false, material representation by the defendant; (2) which the defendant knew was false or made recklessly without knowledge of its truth or falsity; (3) with intent to induce the plaintiff to act upon it; and (4) the plaintiff did actually and justifiably relied upon it and thereby suffer injury. *See JP Morgan Chase Bank*, 546 S.W.3d at 653.

¶36 With the Court having found no evidence of a misrepresentation by Chaudhry that would support AT&T's fraud claim against Chaudhry, no different outcome could be reached on the same facts as to Fiberwave on whose behalf Chaudhry was acting. Again, AT&T failed to specify any particular Law violated by Fiberwave (or Chaudhry) in the payment of kickbacks and therefore did not establish that any representation of compliance with applicable Laws was false. AT&T failed to show that the

Alliance Agreement or its incorporated Guidebook either expressly prohibited the payment of kickbacks or referral fees, or that such payments violated a specific Law.

¶37 Separately, as noted earlier, AT&T did not identify any affirmative representation by Percy that would support a fraud claim against him, individually. With respect to the theory of fraud by omission, AT&T offered no legal basis for imposing any duty on Percy to disclose to his employer that he has received, personally, any payment from a Solution Provider. AT&T did not allege or pursue a breach of fiduciary duty claim against Percy. Nor could it in the absence of evidence that Percy owed AT&T said duty. Accordingly, any duty to disclose would have to arise from some other legal or contractual obligation, and AT&T did not argue for or offer evidence of one.

¶38 Even if the Court assumed there was an actionable misrepresentation or omission by Fiberwave or Percy, the record does not contain a scintilla of evidence in support of the remaining elements of fraud—only conclusory arguments by AT&T. The Court finds that AT&T has failed to establish a genuine issue of material fact that Fiberwave or Percy made a false, material representation (or omission), that Fiberwave or Percy knew to be

false or made recklessly without knowledge of its truth, with intent to induce AT&T to act on the same, and that AT&T did justifiably rely on the same and suffered injury as a result. For these reasons, the Court granted summary judgment on AT&T's fraud claims against Fiberwave and Percy on no-evidence grounds.

¶39  The Court further incorporates here its reasoning for granting summary judgment on traditional grounds with respect to AT&T's fraud claim against Chaudhry as discussed above and adopts the same with respect to AT&T's fraud claims against Fiberwave and Percy. AT&T failed to create a fact issue showing entitlement to any relief. As a matter of law, disgorgement is not an available remedy here because AT&T did not sue for breach of any relationship of trust or confidence. Instead, AT&T sued for money damages— not rescission—the adequacy of which AT&T did not dispute.

¶40  For these reasons, and as further supported by movants' arguments and the record before the Court, the Court determined that AT&T could not prevail on its fraud claims against Fiberwave and Percy as a matter of law.

¶41  In sum, the Court determined that the briefing and evidence before it on the parties' cross-motions for summary judgment was such that

Fiberwave's fraudulent inducement claim and AT&T's fraud claims against Chaudhry, Fiberwave, and Percy could not proceed to trial as a matter of law. Accordingly,

IT IS ORDERED that the parties' remaining contract claims will be tried to a jury, and that the Court will permit the introduction of extrinsic evidence at trial concerning resolution of contractual ambiguities.

SO ORDERED.

ANDREA K. BOURESSA
Judge of the Texas Business Court,
First Division

SIGNED ON July 24, 2026.